## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CARLOS GABRIEL ESTEVEZ | No. 3:14-cr-00191-1 (MPS) |

### RULING ON MOTION FOR NEW TRIAL

On April 2, 2016, the Defendant filed a Motion for New Trial. (ECF No. 339.) For the reasons set forth below, that motion is DENIED.

**I.     BACKGROUND**

On December 8, 2015, a jury found the Defendant guilty of (1) Conspiracy to Distribute and to Possess with Intent to Distribute Heroin in violation of 21 U.S.C. § 846 and (2) Possession with Intent to Distribute and Distribution of Heroin in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A)(i). (ECF No. 265.) Sentencing is scheduled for June 7, 2016.

On December 20, 2015, the Defendant filed a motion to extend the time to file a "potential motion for a new trial," asserting that "on or about December 17, 2015, Defense Counsel received information that Mr. Estevez may have been physically exposed to the jurors in his case while in hand cuffs and being transported to and from the courtroom during trial recesses by members of the U.S. Marshal's Service (USMS)." (ECF No. 275 at 1.) The Defendant sought an additional 14 days to interview potential witnesses "to determine if a motion for a new trial is warranted." (*Id*. at 2.) The motion also stated that "Defense Counsel had no knowledge or information during the trial to believe that Mr. Estevez had been exposed to the jurors in his case, while in custody, during trial recesses" and that, had defense counsel known

this information, he "would have immediately brought it to the Court's attention." (*Id*.) The Court granted the motion, making the motion for new trial due on January 5, 2016.[1] (ECF No. 276.) On January 5, the Defendant filed a second motion for extension of time, seeking until January 19, 2016, to file a "potential motion for new trial." (ECF No. 281 at 3.) In this motion, defense counsel represented that he had not yet been able to make contact with Steven Martone, a potential witness who was housed in the courthouse lock-up at the same time as the Defendant while Mr. Martone was on trial in another case. (*Id*. at 1-2.) The Court granted the motion, making the motion for a new trial due on January 19, 2016. (ECF No. 282.)

January 19 came and went without the filing by the Defendant of any motion for a new trial or any further motion to extend the time for filing such a motion. About a month later, on February 18, 2016, the Defendant filed a "Motion for Issuance of Rule 17(c) Subpoena," seeking a Court order authorizing the issuance of a *subpoena duces tecum* on the Donald W. Wyatt Detention Facility ("Wyatt"), the pretrial detention facility where the Defendant was housed during the trial. (ECF No. 315.) The motion stated that: "Defense Counsel recently learned that Mr. Estevez may have disclosed . . . to [Wyatt] correctional officers . . . both during his transport from Court back to the facility, and upon his arrival" that he "was . . . exposed to jurors while in hand (and possibly leg) restraints being transported either to or from the courtroom . . . ." (ECF No. 315 at 1-2.) Because "[t]he precise identity of these officers remain[ed] unknown" to defense counsel, the motion sought a subpoena to require Wyatt to identify the officers who were

---

[1]  Rule 33(b)(2) of the Federal Rules of Criminal Procedure provides as follows: "Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(2).

assigned to transport Mr. Estevez during the trial, as defense counsel believed that "[t]hese

officers . . . [had] discussed with Mr. Estevez his alleged exposure to the jurors during trial." (*Id.*

at 2.)

On February 22, 2016, the Court denied the motion for issuance of Rule 17(c) subpoena

in the following order:

> ORDER as to Carlos Gabriel Estevez (1). Defendant filed—and the Court
> granted—Defendant's motions 275 and 281 for extensions of time to file a motion
> for a new trial so that defense counsel could interview witnesses regarding
> whether jurors saw the Defendant in hand and/or leg restraints during the trial
> proceedings. The twice-extended deadline for filing such a motion, January 19,
> 2016, has passed. Defendant has filed no motion for a new trial. Instead, on
> February 18, 2016, Defendant filed a motion seeking an order authorizing the
> issuance of a subpoena to Wyatt Detention Facility in order to identify the officers
> who transported Defendant to and from the Court during his trial so that he may
> interview them about whether Defendant told the officers that jurors saw him
> while he was in restraints. Because there is no motion for a new trial pending,
> because the deadline has passed for filing one under Rule 33(b)(2), because the
> Defendant's motion suggests that counsel remains uncertain as to whether there
> is a basis for filing one and can at this point only speculate whether there is, and
> because the evidence he seeks appears to be aimed merely at corroborating
> statements his client has already made to him, the Court DENIES Defendant's
> motion 315 for permission to issue a Rule 17(c) subpoena to Wyatt Detention
> Facility.

(ECF No. 318.)

Finally, on April 2, 2016, the Defendant filed this motion for new trial. (ECF No. 339.) In

the motion, the Defendant asserts that "[o]n or about the second to last day of trial, Mr. Estevez

was exposed to the juror(s) while in handcuffs and restraints." (ECF No. 339-1 at 2.) The

Defendant asserts that after the jurors exited the courtroom at a recess,

> USMS placed Mr. Estevez into handcuffs and prepared to escort him to the
> cellblock.  As they began to exit the courtroom, the marshals pulled Mr. Estevez
> back inside in a sudden and abrupt manner.  Outside the courtroom and in the
> corridor stood one or more of the jurors in his case.  Mr. Estevez encountered or
> was exposed to the juror(s), which prompted the USMS to pull him back inside.

3

(*Id*. at 2.) Attached to the Defendant's motion are affidavits from three of his friends and family members and from Mr. Martone, the potential witness referred to earlier. (Mr. Martone was acquitted in his own trial in December, 2015, and was released at that time.) There is no affidavit from Mr. Estevez himself.

In each of the affidavits filed in support of the motion, the affiant states that the Defendant told the affiant in December 2015 either that the Defendant had been seen by "a juror" or "some of the jurors" as he was being escorted out of the courtroom or that the Defendant told the affiant—after he was abruptly brought back into the courtroom by the U.S. Marshals—that "there is a juror outside." (ECF Nos. 339-2, 339-3, 339-4, 339-5.) No affiant states or suggests that he or she actually observed any jurors outside the courtroom; that he or she left the courtroom at the same time as Mr. Estevez; that he or she had the same angle of sight as Mr. Estevez or the juror(s) who allegedly saw him; that he or she could confirm whether the juror had actually observed Mr. Estevez in restraints or whether he had actually seen a juror; or that he or she otherwise had personal knowledge of the event.

## II.   DISCUSSION

### A.  Defendant Has Failed to Show Excusable Neglect for Untimeliness

Under Rule 33 of the Rules of Criminal Procedure, "[a]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty."[2] Fed. R. Crim. P. 33(b)(2). Rule 45 of the Federal Rules of Criminal

---

[2] Defendant has not suggested that his motion is based on newly discovered evidence. Such motions "must be must be filed within 3 years after the verdict or finding of guilt." Fed. R. Crim. P. 33(b)(1).

Procedure permits the filing of a Rule 33 motion "after the time expires if the party failed to act because of excusable neglect." Fed. R. Crim. P. 45(b)(1)(B).

> The Supreme Court . . . adopted a liberal test for assessing what neglect is excusable, emphasizing that the determination is at bottom an equitable one, taking account of all relevant circumstances, including: (1) the danger of prejudice to the non-moving party, (2) the length of delay and impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the moving party, and (4) whether the moving party acted in good faith.

*Williams v. KFC Nat. Mgmt. Co.*, 391 F.3d 411, 415 (2d Cir. 2004) (quoting *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380 (1993)) (internal quotation marks omitted); *United States v. Caraballo*, No. 5:12-CR-105, 2014 WL 3535348, at *3 (D. Vt. July 16, 2014) (applying *Pioneer* factors to "excusable neglect" under Fed. R. Crim. P. 45(b)(1)(B)). "The *Pioneer* factors do not carry equal weight; the excuse given for the late filing must have the greatest import. While [the others] might have more relevance in a closer case, the reason-for-delay factor will always be critical to the inquiry." *United States v. Munoz*, 605 F.3d 359, 372-73 (6th Cir. 2010) (quoting *Lowry v. McDonnell Douglas Corp.,* 211 F.3d 457, 463 (8th Cir.2000)); *accord United States v. Torres,* 372 F.3d 1159, 1163 (10th Cir.2004); *Silivanch v. Celebrity Cruises, Inc.,* 333 F.3d 355, 366 n. 7 (2d Cir.2003); *Hosp. del Maestro v. NLRB,* 263 F.3d 173, 175 (1st Cir.2001). After taking into account these factors, I conclude that the Defendant has not demonstrated excusable neglect.

### 1.   Danger of Prejudice to Non-Moving Party

"[I]t is at least possible that the Government would be prejudiced by [Defendant's] delay in filing his motion for a new trial" because, as time passes, it becomes increasingly likely that witnesses will be unavailable. *United States v. Sabir*, 628 F. Supp. 2d 414, 417 (S.D.N.Y. 2007).

"In addition, the Government has a significant interest in the finality of the verdict and in getting [Mr. Estevez] sentenced." *Id*. Thus, this factor weighs against finding excusable neglect.

### 2.   Length of Delay and Impact on Judicial Proceedings

The Defendant filed two motions for extensions of time and received an additional 28 days to file a motion for a new trial. He did not move for any further extensions, and then, almost four months after the verdict, he filed a motion for a new trial. The length of this delay weighs against finding excusable neglect. *See Sabir*, 628 F. Supp. 2d at 417 (finding no excusable neglect where Defendant "delayed filing his motions until nearly three months after the verdict . . . having not asked for any further extension of time to file.").

In addition, the impact on judicial proceedings would be substantial because the motion seeks a new trial of the Defendant—months after the verdict—based on information the Defendant could have brought to the Court's attention while the trial was ongoing. If the statements in the affidavits are accepted, then the Defendant was aware of his claim that a juror had seen him in restraints while the trial was still going on, but apparently did not consider it significant enough to mention it to his lawyer until over a week after the verdict.[3] Had the Defendant mentioned the potential exposure to his lawyer when it occurred, on the second-to-last day of trial, the Court accepts defense counsel's representation that he would have raised it with the Court during the trial and requested a *voir dire* of the jurors. The Court would likely have granted defense counsel's request, and would also likely have questioned the U.S. Marshals involved. The Court thereby could have easily investigated Mr. Estevez's claim by questioning

---

[3] The Court accepts defense counsel's representations that he first learned that Mr. Estevez had potentially been exposed to jurors while in restraints on December 17, 2015. (ECF No. 281 at 3.)

jurors. *See United States v. Johnson*, 911 F.2d 1394, 1397 (10th Cir. 1990) (upholding denial of mistrial when trial court made a full inquiry as to whether the fact that a juror saw defendant handcuffed would cause prejudice, and "[n]o juror indicated any inability to be impartial"). If there had been a prejudicial exposure of the Defendant to a juror, the Court likely could have resolved it without the need for a new trial by, for example, dismissing any juror whose ability to be fair and impartial had been compromised and replacing that juror with an alternate. *See United States v. Taveras*, 584 F. Supp. 2d 535, 542 (E.D.N.Y. 2008) ("When a juror or jury is exposed to evidence extrinsic to a criminal trial, a court has the discretion to discharge one or more jurors or to declare a mistrial and impanel a new jury for the proceeding.") (citing *United States v. Thomas*, 116 F.3d 606, 613 (2d Cir. 1997)).

Now, however, it is too late for that. The jurors were discharged over four months ago, and it is unlikely that the U.S. Marshals involved—who transport detainees within the courthouse every day—would even remember Mr. Estevez. While it is true that the trial would have been over and the jurors discharged even had the Defendant filed the motion for a new trial within the original 14 days set by Rule 33(b)(2)—or before the extended deadline of January 19—memories of the event at least would have been fresher then.

### 3.  Reason for the Delay

Although the Court twice extended the Rule 33 deadline at the Defendant's request, the Defendant did not file a motion for new trial or any further motions for extensions of time within the extended time period the Court allowed. Defendant offers no explanation for why he failed to seek further extensions from the Court. This factor weighs against finding excusable neglect. *See*

*Sabir*, 628 F. Supp. 2d at 417 ("because [defendant] has no reason for the delay in filing these motions, this factor weighs in favor of dismissal").

The Defendant suggests that it took several months to secure affidavits from the four affiants. (ECF No. 339-1 at 3-4.) This claim does not withstand scrutiny. Two of the affiants—the Defendant's cousin and the mother of his child—reside in New York City, and the Defendant offers no explanation for why it took him three and a half months to secure affidavits from individuals who live within a few hours of the courthouse and are reporting what the Defendant allegedly told them during the first week of December 2015. In addition, while the affidavit from the Defendant's mother might have taken a bit longer to obtain because she resides in the Dominican Republic, the Defendant does not explain why he was unable to obtain at least a faxed or emailed version of the affidavit from her earlier. And while it is understandable that it took some time to find Mr. Martone, it is unclear why the Defendant did not simply file the motion earlier and seek extra time to obtain the affidavit from Mr. Martone—or simply seek more time for the entire motion. More generally, the Defendant offers no explanation for why he did not file the motion with some of the affidavits earlier and request additional time to supplement the record with additional affidavits—or, for that matter, simply request additional time to file the motion as a whole, as he had previously done.

It is worth noting that in the February 18 motion for a Rule 17(c) subpoena, the Defendant made no mention of the need for additional time to obtain the affidavits that he ultimately filed with this motion—or even suggested that he was working on obtaining such affidavits. Indeed, the motion for new trial itself suggests that defense counsel did not even begin attempting to obtain affidavits from most of the affiants until March 2016—nearly three months after the trial

and over a month after the extended deadline had expired. The Defendant knew how to seek additional time and, in fact, did so and received an additional 28 days. He offers no explanation for why he did not seek more time after January 19 to secure the affidavits.

The Defendant also offers no explanation for why he himself—who, unlike the affiants, has personal knowledge of what he saw—has not filed an affidavit in support of the motion, which would have carried substantially more weight than statements by persons who merely repeat what the Defendant told them. Presumably, the Defendant himself could have filed such an affidavit as early as December 2015, and he offers no explanation for his failure to do so. Nor does the Defendant suggest that he has ever tried to contact the U.S. Marshals who were transporting him within the courthouse during the trial—the only other persons (besides, possibly, the juror(s) themselves) who would likely have had personal knowledge of the event. The U.S. Marshals work in the courthouse, and there is no reason the Defendant could not have at least attempted to interview them before April 2, 2016.[4] Therefore, the Court finds that Defendant "lack[s] of any reason—let alone any good reason—for the delay, which was entirely

---

[4] The Defendant also does not suggest that he sought to contact any of the jurors to find out what they might have seen. As the Defendant points out, this Court's Local Rules place restrictions on contacts with jurors. Lawyers may not communicate with jurors during trial except with the permission of and under the supervision of the Court. Lawyers may contact jurors after trial, but may not question a juror about the jury's deliberations, votes, or the actions or comments of any other juror, and may not contact a juror "in any manner which subjects the juror to harassment, misrepresentation, duress or coercion." D. Conn. L. R. 83.5.1(d); *see also* Fed.R.Evid. 606(b) (while a juror may testify about whether "extraneous prejudicial information was improperly brought to the jury's attention," a juror may not testify about "the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict . . . ."). Because of the Local Rule's strictures, prudent counsel in this District typically do not contact jurors—even after trial—without the Court's permission, although, as noted, this is not required. In any event, the Defendant never sought the Court's permission to contact any jurors, and his brief suggests that he has not tried to make any such contacts.

within [Defendant's] control." *United States v. Dupree*, No. 10-CR-627 S-2 KAM, 2012 WL 5333946, at *33 (E.D.N.Y. Oct. 26, 2012).

### 4.   Whether Moving Party Acted in Good Faith

Because there has been no showing that the Defendant acted in bad faith in filing this motion, "this factor supports a finding of excusable neglect." *United States v. Long*, No. CR 09-50051-01-KES, 2012 WL 1190254, at *4 (D.S.D. Apr. 9, 2012).

Since three of the four factors weigh against finding excusable neglect—including the third and most important factor—Mr. Estevez's motion for a new trial is untimely and the delay is not excused. *See United States v. French*, No. 1:12-CR-00160-JAW-02, 2015 WL 7012732, at *5 (D. Me. Nov. 12, 2015) (concluding that defendant's motion for a new trial is untimely where first three factors weigh against finding excusable neglect).

### B.   The Motion Fails on the Merits

Even if the motion was timely, it would fail on the merits. "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. "It would be entirely inappropriate for this court to order a new trial at this time, when it is not clear what occurred, or whether defendant[] suffered prejudice." *United States v. Ianniello*, 866 F.2d 540, 543 (2d Cir. 1989) (citations omitted).

The "[Supreme] Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Smith v. Phillips,* 455 U.S. 209, 215 (1982); *see also Remmer v. United States,* 347 U.S. 227, 230 (1954). The Second Circuit has warned, however, that:

> district courts should be reluctant to haul jurors in after they have reached a
> verdict in order to probe for potential instances of bias, misconduct or extraneous

10

influences, because post-verdict inquiries may lead to evil consequences: subjecting juries to harassment, inhibiting juryroom deliberation, burdening courts with meritless applications, increasing temptation for jury tampering and creating uncertainty in jury verdicts.

*United States v. Vitale*, 459 F.3d 190, 197 (2d Cir. 2006) (internal quotation marks and citations omitted).

"[A] trial court is required to hold a post-trial jury hearing when reasonable grounds for investigation exist. Reasonable grounds are present when there is clear, strong, substantial and incontrovertible evidence, that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial of a defendant." *Vitale*, 459 F.3d at 197 (internal quotation marks omitted) (quoting *United States v. Sun Myung Moon*, 718 F.2d 1210, 1234 (2d Cir. 1983)). In *Vitale,* the Second Circuit held that the district court abused its discretion by refusing to conduct a post-trial inquiry into juror bias after revelation of a professional relationship between the juror, the juror's husband, and the prosecutor's husband. *Vitale*, 459 F.3d at 191. It reasoned that without a hearing there were "too many unanswered questions" as to "why this issue was not aired during the voir dire and whether the prosecutor knew during the trial that her husband recognized a juror." *Id*. 197-98. Those issues are not present here; there is no evidence that either counsel was aware, until after the trial, that a juror had allegedly seen Mr. Estevez in restraints during the trial. Moreover, here, Defendant does not seek the remedy endorsed by the Supreme Court; he seeks a new trial rather than a post-trial jury hearing. In any event, Defendant has failed to show reasonable grounds for such a hearing. There is no "clear, strong, substantial and incontrovertible evidence" that any juror saw Mr. Estevez in handcuffs, shackles, or restraints during the trial. Defendant's motion proffers no admissible evidence to support the Defendant's claim that jurors saw him in restraints. None of the affiants has personal knowledge as to

whether a juror saw Mr. Estevez while he was in restraints, and their testimony would be inadmissible under Rules 602 and 802 of the Federal Rules of Evidence.[5] *See United States v. Gillette*, 383 F.2d 843, 848 (2d Cir. 1967) ("The affidavit submitted . . . is insufficient in that it does not, for example, allege personal knowledge . . . accordingly, there was no factual issue to be resolved . . . ." and court correctly denied suppression hearing). As noted, the Defendant has submitted no affidavits from the only persons who might have had personal knowledge to support his claim—himself, the U.S. Marshals, or the jurors.

Further, the claim itself is speculative. Even the Defendant's brief is equivocal concerning what exactly happened:

> On or about the second to last day of trial, Mr. Estevez was exposed to the juror(s) while in handcuffs and restraints. The court was in recess. Once the jurors exited the courtroom, the USMS placed Mr. Estevez into handcuffs and prepared to escort him to the cellblock. As they began to exit the courtroom, the marshals pulled Mr. Estevez back inside in a sudden and abrupt manner. Outside the courtroom and in the corridor stood one or more of the jurors in his case. Mr. Estevez encountered or was exposed to the juror(s), which prompted the USMS to pull him back inside.

(ECF No. 339-1 at 2.) This passage does not clearly state that a juror actually saw Mr. Estevez in restraints, which is not surprising. Detainees in the Ribicoff courthouse are typically cuffed behind the back, and leg restraints are not typically used on detainees while on trial. Thus, unless the U.S. Marshals were walking Mr. Estevez out of the courtroom backwards, it is unlikely, based on the affiants' description that he was pulled back into the courtroom as he was exiting,

---

[5] The affiants' testimony about what the Defendant *told* them he saw could be admissible if the Defendant himself testified that he observed a juror looking at him and the Government sought to impeach his credibility. *See* Fed. R. Evid. 801(d)(1)(B). But as noted, the Defendant has not submitted an affidavit, and the Court therefore assumes that he does not propose to testify at any evidentiary hearing the Court might otherwise have ordered on this issue.

that any juror actually saw restraints on him. To be sure, it is possible that because his hands were behind his back and/or because he was accompanied by U.S. Marshals (who were, like the Defendant, dressed in business suits during the trial) that any juror who saw the Defendant exiting the courtroom *might* have inferred that he was in custody. Especially where the Defendant has not submitted an affidavit by a witness who has personal knowledge to support his claim, however, such speculation simply does not warrant granting a post-trial jury hearing, much less a new trial.

Finally, even if juror(s) briefly saw Mr. Estevez in restraints as he was being transported during a recess—which is the most that the Defendant's motion suggests happened—any such glimpse would have been harmless. "Where an extraneous influence is shown, the court must apply an objective test, assessing for itself the likelihood that the influence would affect a typical juror." *United States v. Greer*, 285 F.3d 158, 173 (2d Cir. 2002) (internal citations and quotation marks omitted). The Court concludes that a typical juror would not have been influenced by glimpsing Mr. Estevez in restraints. Most jurors are aware that defendants may be incarcerated during trials.

> [E]ven the most unsophisticated juror must know that defendants indicted for serious crimes, and often even for minor ones, may have to post bail. They must also know that many defendants lack the resources to accomplish this. Under these circumstances we cannot think that the emotional impact of seeing the defendant in custody is necessarily hostile . . . .

*Dupont v. Hall*, 555 F.2d 15, 17 (1st Cir. 1977) (citing *Estelle v. Williams*, 425 U.S. 501, 507-08 (1976)). Courts have "distinguished the inherent prejudice to a defendant who is shackled while in the courtroom from a defendant who has been observed in shackles for a brief period elsewhere in the courthouse." *United States v. Moreno*, 933 F.2d 362, 368 (6th Cir. 1991)

13

(citation omitted); *Wharton v. Chappell*, 765 F.3d 953, 965 (9th Cir. 2014) ("jurors know that, as a matter of routine, some defendants are in custody during trial and that security needs during transport demand restraints"); *United States v. Simpson*, 950 F.2d 1519, 1522 (10th Cir. 1991) ("[w]hen a jury has accidentally seen a defendant in handcuffs in an isolated incident, when the jury has been discharged, and when a codefendant can assert nothing more than the possibility of prejudice, it is not an abuse of the trial court's discretion to deny an evidentiary hearing and to deny a motion for new trial based upon extraneous juror information."); *United States v. Ayres*, 725 F.2d 806, 813 (1st Cir. 1984) ("In the absence of a showing of prejudice . . . a fleeting glance by jurors of a defendant outside the courtroom in handcuffs does not justify a new trial."); *Wright v. State of Tex.*, 533 F.2d 185, 187 (5th Cir. 1976) (collecting cases supporting the proposition that "a brief and fortuitous encounter of the defendant in handcuffs by jurors is not prejudicial and requires an affirmative showing of prejudice by the defendant"); *United States v. Leach*, 429 F.2d 956, 962 (8th Cir. 1970) (finding that district court did not err in refusing to grant a mistrial when some jurors saw defendants in handcuffs because "[i]t is a normal and regular as well as a highly desirable and necessary practice to handcuff prisoners when they are being taken from one place to another, and the jury is aware of this"). Mr. Estevez was not shackled while in the courtroom and, as noted, appeared in court in business attire. Thus, a typical juror would not have been influenced by briefly seeing Mr. Estevez in restraints as he was being transported from the courtroom during a trial recess. Finally, the Court instructed the jurors, on multiple occasions, to afford the Defendant the presumption innocence, hold the Government to its burden of proof, keep an open mind until the close of evidence, and consider only the evidence presented during the trial.

14

**III.    CONCLUSION**

For the reasons set forth above, the Defendant's Motion for New Trial is DENIED.


IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
              May 4, 2016